IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10060 |
| | ) | |
| ABERTHA HORO, | ) | |
| a/k/a ELENA ALFARO SANCHEZ, | ) | |
| | ) | |
| Defendant. | ) | |

FILED
AUG 17 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## MEMORANDUM OF DEFENDANT WITH REFERENCE TO OFFENSE LEVEL COMPUTATION

NOW comes the Defendant, ABERTHA HORO, by her counsel, DENNIS M. SHEEHAN, and offers to the Court for its consideration a computation under the United States Sentencing Commission Guidelines Manual for the Court's assistance in making a determination as to the Defendant's punishment for the crimes she has previously admitted to have violated under Federal law:

1. On May 19, 2006 the Defendant appeared before the Court and entered pleas of guilty to Counts I and II of a Bill of Indictment in the above case.

2. The Defendant has now had an opportunity to thoroughly review with her counsel (with the assistance of an interpreter) the Pre-Sentence Investigation Report prepared by Mary J. Kennedy, a United States Probation Officer.

3. In this Pre-Sentence Investigation Report (paragraphs 24 through 35 of the Report) Ms. Kennedy calculated that the Defendant's Total Offense Level was 19.

4. The Defendant does not disagree that the Base Offense Level for these crimes is level 6.

5. It is the contention of the Probation Officer that the Base Offense Level should be elevated by 10 in calculating the determination of loss suffered by the various victims. Ms. Kennedy states in paragraph 25 of the Pre-Sentence Investigation Report that the Court should consider not the actual loss suffered by victims but the maximum intended loss. The maximum intended loss, as stated in paragraph 25 according Ms. Kennedy, is the maximum credit limit for each of the credit cards used by either the Defendant or her co-conspirators. In calculating these sums, Ms. Kennedy has arrived at a figure of slightly less than 138,000.00. Elsewhere in the Pre-Sentence Report (see paragraph 16) Ms. Kennedy has calculated an actual restitution loss of $29,652.48 based upon the misconduct of not only the Defendant but also her co-conspirators.

It is the contention of the Defendant that the Court should not consider the intended loss at calculating the amount for increasing the offense level for the following reasons.

First, nothing stated in the Pre-Sentence Report shows an intention by either the Defendant or any of her co-conspirators to charge to the absolute limit any credit card or debit card stolen by either the Defendant or any of her co-conspirators.

Second, no evidence can be shown to the Court with reference to these criminal activities by these persons that any credit card was actually used to charge any purchases to the absolute limit.

Third, there will be no evidence offered before the Court at this sentencing hearing nor was there any proof shown by investigators of these crimes that any of the co-conspirators checked the credit cards stolen to determine the limits of any of the credit cards. The Defendant contends that in order for the Court to allow an increase in the offense level as requested by the Probation Officer to 10, there must be evidence offered to the Court of a specific intent by one or all of the co-conspirators to use the stolen credit cards illegally to charge those credit cards to the limit (see U.S.

v. Mei (7th Circuit, 2003)315 F.3d 789). Rather than the plus 10 stated in paragraph 25 of the Pre-Sentence Investigation Report, the Defendant contends that the Court should find that the loss was more than $30,000.00 but less than $70,000.00 which would then result in plus 6 increase in the offense level or, the Defendant respectfully submits, that the Court, after considering the argument and evidence offered by the parties, even decide that the determination of loss, as it applies to the Defendant, is less than $30,000.00.

6. With reference to paragraph 27 of the Offense Level Computation it is the contention of the Defendant that even though the Court could well find that the Defendant participated in criminal activity which used some sophisticated means to commit crimes, the sophistication of this plan was not originated by the Defendant but was, in fact, originated in the minds of her two co-conspirators Mr. Drexler and "Mario". The Defendant's co-conspirators brought her to the State of Michigan as stated in the Pre-Sentence Report and also did bring her from the Northern District of Illinois to the Central District of Illinois. The two co-conspirators (Drexler and "Mario") undoubtedly moved the conspiracy around for the purpose of evading detection. However, the Defendant was never involved in the planning of these activities nor did she have the training, experience or sophistication to be a formulator of policy for these two men. It is for all of these reasons that the Defendant requests that the Court determine that the two level upward adjustment requested in paragraphs 27 not be applied to her.

7. With reference to paragraph 30 of the Offense Level Computation the Defendant does contend that Court should consider a downward departure for the Defendant's role in this offense. The reasons she makes that claim are the following. The Defendant is a 57 year old alien from the country of Mexico. She acknowledges that she does have a General Equivalency Diploma. She does not deny that she has been convicted, in the past, of a number of crimes involving theft during her

lifetime. She is not fluent in the English language but based upon the length of time she has resided in the United States she is able to understand some of the English language. Her crimes have never involved violence. Her family and personal history are explained in paragraphs 71 through 74 of the Pre-Sentence Investigation Report.

On May 19, 2006, the Defendant signed a document entitled Defendant's Admissions With Reference to Bill of Indictment which was presented to the District Court Clerk on that date. In that document, the Defendant detailed for the Court's consideration the manner in which the Defendant became involved with "Mario" in Los Angeles, California and how she became acquainted with Fritz Drexler. The Defendant readily acknowledges that when she came to realize that these two men had brought her to the State of Illinois for the purpose of assisting them in plans the two of them had already originated, she should have departed the State of Illinois at the earliest opportunity and returned back to Los Angeles, California. It is the contention of the Defendant that she was instructed by "Mario" and Fritz Drexler what to do when the thefts from the automobiles occurred (act as a look-out and perform no other function in the commission of the burglaries and thefts) and then later represent herself to be persons named on stolen credit cards and directed by "Mario" and Mr. Drexler to use these cards for the purpose of mainly financially benefitting Mr. Drexler and "Mario" substantially and only herself minimally. The Court should classify her role in this criminal activity as minor. As the Court will see from the Admissions statement which was filed with the Federal District Clerk on May 19, 2006, the Defendant did abandon "Mario" and Fritz Drexler while they, as far as she knows, were continuing to plan further criminal activity to enrich themselves.

Based upon her level of intelligence and the fact that she had arrived in the Chicago, Illinois area virtually penniless the Defendant was basically at the mercy of Fritz Drexler and "Mario" and even though she knew that what she was doing was criminally wrong, Mr. Drexler and "Mario" told

her to do this activity and she was approximately 3000 miles away from friends and members of her family while these activities were occurring in northern and central Illinois. When the first opportunity arrived for her to abandon this conspiracy without risk to herself, she abandoned the conspiracy and returned by bus to the State of California. The factual statements made in the Defendant's Admissions with Reference to the Bill of Indictment filed May 19, 2006 with the Court and the statements she has made in this document are the reasons she is requesting of the Court that the Court grant to her a downward adjustment for her role in this criminal activity.

Respectfully submitted,

_____
ABERTHA HORO, Defendant

_____
DENNIS M. SHEEHAN
Her counsel

## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters herein stated to be on information and belief and as to such matters the undersigned certifies, as aforesaid, that she believes the same to be true.

_____
ABERTHA HORO

DENNIS M. SHEEHAN
Counsel for Defendant
406 Court Street
Pekin, IL 61554
(309) 347-5217